IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| SCOTTIE ALLEN KEY, #298879, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | NO. 3:23-cv-00920 |
| ) | |
| CORECIVIC, INC., et al., ) | JUDGE RICHARDSON |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is a pro se Complaint for alleged violation of civil rights pursuant to 42 U.S.C. § 1983 (Doc. No. 1), filed by Scottie Key, an inmate at the Turney Center Industrial Complex Annex in Clifton, Tennessee. Plaintiff has also filed an application to proceed in forma pauperis (IFP) (Doc. No. 2) and a motion to appoint counsel (Doc. No. 3).

The matter is before the Court for ruling on Plaintiff's IFP application and motions and for an initial review under the Prison Litigation Reform Act (PLRA), 28 U.S.C. § 1915A.

**APPLICATION TO PROCEED IFP**

A prisoner bringing a civil action may be permitted to file suit without prepaying the filing fee. 28 U.S.C. § 1915(a). Because it appears from Plaintiff's submission that he lacks sufficient financial resources to pay the full filing fee in advance, his application to proceed IFP in this matter (Doc. No. 2) is **GRANTED** and a $350 filing fee[1] is **ASSESSED**.

---

[1] While prisoners who are not granted pauper status must pay a total fee of $402—a civil filing fee of $350 plus a civil administrative fee of $52—prisoners who are granted pauper status are only liable for the $350 civil filing fee. *See* 28 U.S.C. § 1914(a)–(b) and attached District Court Miscellaneous Fee Schedule, provision 14 (eff. Dec. 1, 2020).

The warden of the facility in which Plaintiff is currently housed, as custodian of his trust account, is **DIRECTED** to submit to the Clerk of Court, as an initial payment, the greater of: (a) 20% of the average monthly deposits to Plaintiff's credit at the jail; or (b) 20% of the average monthly balance to Plaintiff's credit for the six-month period immediately preceding the filing of the Complaint. 28 U.S.C. § 1915(b)(1). Thereafter, the custodian shall submit 20% of Plaintiff's preceding monthly income (or income credited to Plaintiff for the preceding month), but only when the balance in his account exceeds $10. *Id.* § 1915(b)(2). Payments shall continue until the $350 filing fee has been paid in full to the Clerk of Court. *Id.* § 1915(b)(3).

The Clerk of Court **MUST** send a copy of this Order to the warden of the facility in which Plaintiff is currently housed to ensure compliance with that portion of 28 U.S.C. § 1915 pertaining to the payment of the filing fee. If Plaintiff is transferred from his present place of confinement, the custodian must ensure that a copy of this Order follows Plaintiff to his new place of confinement, for continued compliance with the Order. All payments made pursuant to this Order must be submitted to the Clerk of Court for the United States District Court for the Middle District of Tennessee, 719 Church Street, Nashville, TN 37203.

## INITIAL REVIEW OF THE COMPLAINT

I.  LEGAL STANDARD

The Court must conduct an initial review and dismiss the Complaint (or any portion thereof) if it is facially frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915A. The review for whether the Complaint states a claim asks whether it contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," such that it would survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Hill*

2

*v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Although pro se pleadings must be liberally construed, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), they must still "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Iqbal*, 556 U.S. at 678, upon "view[ing] the complaint in the light most favorable to the plaintiff[.]" *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009).

Plaintiff filed this action under § 1983, which authorizes a federal suit against any person who, "under color of state law, deprives [another] person of rights, privileges, or immunities secured by the Constitution or conferred by federal statute." *Wurzelbacher v. Jones-Kelley*, 675 F.3d 580, 583 (6th Cir. 2012) (citations omitted); 42 U.S.C. § 1983. Accordingly, the Complaint must plausibly allege: (1) a deprivation of a constitutional or other federal right, and (2) that the deprivation was caused by a "state actor." *Carl v. Muskegon Cnty.*, 763 F.3d 592, 595 (6th Cir. 2014).

II. PROCEDURAL HISTORY

Plaintiff sues CoreCivic, Inc., Chief Porter, and Unit Manager Lybranca Cockrell for alleged violations of his Eighth Amendment rights in 2022, when he was housed at the Trousdale Turner Correctional Center (TTCC), a state prison privately managed by CoreCivic. (Doc. No. 1 at 2–6.) The Complaint is a re-presentation of Plaintiff's complaint in *Key v. CoreCivic of Am.*, Case No. 3:22-cv-00519. In that case, Judge Trauger performed an initial PLRA screening and found viable claims stated against CoreCivic, Porter, and Cockrell. (Case No. 3:22-cv-00519, Doc. No. 5.) Judge Trauger directed the Clerk to send Plaintiff three service packets and referred the case to Magistrate Judge Holmes. (*Id.*) Plaintiff did not receive the service packets, which were returned to the Court along with Judge Trauger's order in an envelope marked "not deliverable"

and "gone." (*Id.*, Doc. No. 6.) Upon reviewing the matter, Magistrate Judge Holmes noted that Plaintiff appeared to have been released from TTCC on parole prior to the attempted delivery of the packets, without providing an updated mailing address to the Court; she thus recommended that his case be dismissed without prejudice due to failure of timely service of process and failure otherwise to prosecute. (*Id.*, Doc. No. 7.) On March 21, 2023, Judge Trauger adopted the recommendation and dismissed the case without prejudice. (*Id.*, Doc. Nos. 8–9.)

In response to Plaintiff's subsequent letters and his motion for post-judgment relief, Judge Trauger declined to reopen the dismissed case but noted that the dismissal "was without prejudice, which means that its viable claims can be re-filed in a new action in accordance with the applicable laws governing timely filing. *See generally Primm v. Tennessee Dep't of Correction*, No. 3:19-CV-00690, 2019 WL 4038330 (M.D. Tenn. Aug. 27, 2019), and state statutes discussed therein." (*Id.*, Doc. No. 18.)

III.  ANALYSIS

Plaintiff has now re-filed his claims against CoreCivic, Porter, and Cockrell. The claims he presented in Case No. 3:22-cv-00519, which he re-presents here, accrued more than one year prior to the current Complaint's filing. Though the claims would otherwise be imperiled by the applicable one-year statute of limitations, *see Dibrell v. City of Knoxville, Tennessee*, 984 F.3d 1156, 1161 (6th Cir. 2021), the applicable savings statute, Tenn. Code Ann. § 28-1-105,[2] allows a

---

[2] This statute, as pertinent here, provides as follows: "If the action is commenced within the time limited by a rule or statute of limitation, but the judgment or decree is rendered against the plaintiff upon any ground not concluding the plaintiff's right of action, . . . the plaintiff, or the plaintiff's representatives and privies, as the case may be, may, from time to time, commence a new action within one (1) year . . . ." Tenn. Code Ann. § 28-1-105(a). This savings statute applies to § 1983 actions filed in Tennessee. *See Hochstetler v. City of Hendersonville, Tennessee*, No. 3:23-CV-00028, 2023 WL 5517207, at *2–3 (M.D. Tenn. Aug. 25, 2023) (analyzing savings provision of § 28-1-105 after noting that limitations period and "also 'closely related questions of tolling and application'" are governed by state law in § 1983 case) (quoting *Harris v. United States*, 422 F.3d 322, 331 (6th Cir. 2005)).

new complaint in cases such as this—presenting "substantially the same cause of action" as a prior, timely complaint that was dismissed without prejudice, and (timely) filed within one year of the prior complaint's dismissal—so as "to provide a diligent plaintiff a chance to renew a suit if it is dismissed other than by a judgment on the merits." *Primm*, 2019 WL 4038330, at *3.

The current Complaint clearly presents "substantially the same cause of action" as the original. Indeed, the Complaint contains a verbatim repetition of large swaths of Judge Trauger's statement of facts she found sufficient to support plausible claims against these Defendants. (*Compare* Doc. No. 1 at 5–6 *with* Case No. 3:22-cv-00519, Doc. No. 5 at 4–5.) Those facts, alleged by Plaintiff and presumed true for purposes of initial review, are as follows: "Due to CoreCivic['s] various policies and customs at [TTCC] pertaining to allowing gang members to assault, . . . police[,] [and] . . . extort other inmates," and the "[l]ong standing custom of declining to intervene in gang-related conflicts unless serious injury results[,] . . . Plaintiff was assaulted by multiple gang members" in 2018, when he was placed in protective custody because he sustained severe injuries, and on January 24, 2022, when he was targeted by gang members for extortion. (Doc. No. 1 at 5.) Then,

> [o]n April 13, 2022, knowing that he had a parole hearing scheduled in October, plaintiff decided to come out & face the knives and threats and killers to stop getting write ups [for refusing his cell assignment].³ However, he was assigned to a cell occupied by a gang member who would not allow him to remain in the cell, and who had treated the last four cellies before the Plaintiff, the same way. The Plaintiff left the cell and spent the night in the day room, after which Chief Porter returned him to his assigned cell. He was again threatened by his cellmate, who told him to "get out" and threatened that the plaintiff would "get hurt" if he returned. After spending a second night in the day room, the plaintiff was confronted by Chief Porter and commanded to return to the cell. He objected that his cellmate would hurt him if he returned, and Chief Porter responded by stating that he "would rather be hurt by the cellmate than to be hurt by Porter," and "'You don't want me to hurt

---

³ Judge Trauger's order recounts that, after the January 2022 assault, Plaintiff "was denied placement in protective custody after a hearing on February 10, 2022," and so resorted to "'tak[ing] write ups' so as to remain in segregation where he could avoid exposure to violent inmates." (Case No. 3:22-cv-00519, Doc. No. 5 at 4.)

5

you.'" When Plaintiff still refused to return to his cell, Chief Porter ordered him up against the wall, and though Plaintiff's feet were spread apart, Chief Porter forcefully swept his right leg farther apart, which pulled something in Plaintiff's groin and reinjured his back at the site of an old disc surgery. Plaintiff requested medical attention for the assault, but was ignored and denied medical assistance.

. . .

On May 4, 2022, the plaintiff and a new cellmate were robbed and assaulted by two gang-member inmates with knives. Unit Manager Cockrell responded to this incident and directed that the plaintiff be seen in medical. When the plaintiff told Cockrell that another gang-affiliated inmate was trying to make him pay shower security, she mentioned moving the plaintiff to a different unit. But after Cockrell left the plaintiff's cell, no staff members came to take him to medical or to otherwise check on him. The Plaintiff came out of his cell after two days, to eat, shower, and use the phone. Two days after that, on May 8, 2022, he was again assaulted by a gang-affiliated inmate. Plaintiff avers that if Unit Manager Cockrell would have kept her word the assault would not have happened.

On the afternoon of May 15, 2022, the plaintiff was waiting to use the phone when a gang-affiliated inmate asked him when he would make his "shower security" payment. When the Plaintiff replied that he did not have any money, the other inmate attacked him and was soon joined by two other inmates. As a result of this attack, which the Plaintiff told Unit Manager Cockrell . . . was gonna happen, he was left with an extremely swollen face and pain that was not addressed until the following day, when he was sent to Trousdale County Hospital. When he returned to TTCC, the Plaintiff was placed in protective custody.

(Doc. No. 1 at 5–6.)

Plaintiff asserts that CoreCivic subjected him to violence at the hands of other inmates, in keeping with its customary hands-off approach to gang-related conflicts, by "refus[ing] to declare particular inmate gang members 'incompatible' with the plaintiff or to address his repeated complaints of threats associated with gang-enforced 'shower security.'"[4] (*Id.* at 6.) He complains of serious physical injuries resulting from the attacks alleged above, and significant residual effects

---

[4] The Court has considered the alleged "shower security" protocol at TTCC in a prior case where multiple plaintiffs alleged that, under this protocol, "non-gang-affiliated inmates who do not allow gang-affiliated inmates to proceed to the shower are charged a fee, and if they cannot pay, they are beaten or stabbed." *Sexton v. Core Civic Inc. of Tennessee*, No. 3:22-CV-00489, 2022 WL 10198330, at *2 (M.D. Tenn. Oct. 17, 2022).

6

of those injuries, including "excruciating headaches," permanent facial scars, "PTSD which includes night terrors, anxiety, nightmares, and depression," and "[c]hronic episodes of blurred vision." (*Id.* at 6–7.) He seeks an award of compensatory and punitive damages. (*Id.* at 7.)

In her initial review of the complaint in Case No. 3:22-cv-00519, Judge Trauger analyzed Plaintiff's allegations and claims as follows:

> Liberally construed, the plaintiff's allegations support a claim that the defendants violated his Eighth Amendment rights by failing to protect him from violence at the hands of inmate gang members. To state a viable failure-to-protect claim, an inmate must allege that officials were deliberately indifferent "to a substantial risk of serious harm" to the inmate. *Farmer v. Brennan*, 511 U.S. 825, 828 (1994); *Greene v. Bowles*, 361 F.3d 290, 294 (6th Cir. 2004). To meet this standard, the inmate must show that officials were "subjectively aware of the risk" of harm and "disregard[ed] that risk by failing to take reasonable measures to abate it." *Greene*, 361 F.3d at 294 (quoting *Farmer*, 511 U.S. at 847). For purposes of preliminary review, both Chief Porter and Unit Manager Cockrell are sufficiently alleged to have been aware of a risk of harm to the plaintiff from, respectively, a combative gang-member cellmate known to threaten new cellmates (and whom Chief Porter had been advised was specifically threatening the plaintiff), and different gang members attempting to enforce their "shower security" extortion scheme (whom the plaintiff reported to Cockrell, prompting her remark about moving him to a different unit). These facts allow the reasonable inference that defendants Porter and Cockrell, in leaving the plaintiff housed with those threatening gang members, were deliberately indifferent to his safety.
>
> Only Cockrell's deliberate indifference is alleged to have resulted in actual harm at the hands of other inmates. However, at this early stage and construing the Complaint in the plaintiff's favor, the court finds that a colorable failure-to-protect claim is stated against Chief Porter as well as Unit Manager Cockrell, given the level of hostility toward [Plaintiff] from gang-affiliated inmates and other instances where he was attacked by gang members during the same timeframe as his interaction with Porter. *See Douglas v. Annuci*, No. 14-CV-6018 CJS, 2017 WL 5159194, at *6 (W.D.N.Y. Nov. 7, 2017) (finding that risk of serious harm was not insubstantial simply because plaintiff had not been assaulted in conjunction with the particular risk ignored, where plaintiff alleged active contract on his life by prison gang members and other occasions where he was violently attacked by gang members; declining to dismiss failure-to-protect claim).
>
> Moreover, although Chief Porter's refusal to relieve the plaintiff from his assignment to a cell with a hostile gang member did not result in the plaintiff being attacked by that gang member, it did result in Porter's use of allegedly excessive force against the plaintiff. "An excessive force claim has two components: (1) the

7

objective component, whether the injury was sufficiently serious and (2) the subjective component, whether the prison official applied force 'in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.'" *Young v. Hooks*, No. 17-3389, 2018 WL 4998183, at *1 (6th Cir. Sept. 5, 2018) (quoting *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011)). In his Complaint, the plaintiff alleges that Porter threatened to hurt him if he did not comply with the order to go back to his assigned cell, and when the plaintiff refused out of fear of his gang-affiliated cellmate, Porter ordered the plaintiff against the wall and, despite the plaintiff's compliance with this order, "forcefully swept his right leg" which caused him to pull his groin muscle and injure his back. (Doc. No. 1 at 12–13.) Accepting those allegations as true, the plaintiff has provided sufficient facts to show that Porter "injured him and did so for the purpose of causing harm." *Young*, 2018 WL 4998183, at *1 (drawing same conclusion from allegations that defendant "order[ed] Young against the wall [and] violently kicked his ankles, causing him to fall and injuring him"). Accordingly, the Complaint states a colorable excessive-force claim against Chief Porter.

. . . [A]t this early stage and liberally construing the Complaint in the plaintiff's favor, his allegations of (1) being placed in protective custody at TTCC on two occasions, after severe beatings in 2018 and May 2022, (2) while such placement was denied at all other times despite his ongoing conflicts with gang members (including an assault in January 2022) and (3) while the institution refused to declare particular inmates "incompatible" with the plaintiff or to address his repeated complaints of threats associated with gang-enforced "shower security," allow the reasonable inference that CoreCivic maintains a custom of declining to intervene in gang-related conflicts unless serious injury results. Accordingly, an Eighth Amendment failure-to-protect claim will also proceed against CoreCivic.

(Case No. 3:22-cv-00519, Doc. No. 5 at 5–8.)

For purposes of initial review of the Complaint before it, the Court adopts Judge Trauger's analysis in its totality. Plaintiff's claims of failure to protect/deliberate indifference to safety will proceed against CoreCivic, Porter, and Cockrell, and his claim of excessive force will proceed against Porter.

## MOTION TO APPOINT COUNSEL

Plaintiff has filed a Motion to Appoint Counsel (Doc. No. 3), supported by a Memorandum of Law (Doc. No. 4) and his affidavit (Doc. No. 5). Appointment of counsel for an indigent plaintiff in a civil action is "justified only in exceptional circumstances." *Miles v.*

*Michigan Dep't of Corr.*, No. 19-2218, 2020 WL 6121438, at *4 (6th Cir. Aug. 20, 2020) (citing *Lanier v. Bryant*, 332 F.3d 999, 1006 (6th Cir. 2003), and *Lavado v. Keohane*, 992 F.2d 601, 606–07 (6th Cir. 1993)). Whether to appoint counsel in such a case is a matter within the discretion of the district court, considering the type of case presented and the ability of the plaintiff to represent himself. *Lavado*, 992 F.2d at 604, 606. Here, Plaintiff points out that he has limited reading and writing skills as well as significant injury-related limitations and limited access to a legal aide, and that his case will require him to obtain and interpret medical records from both TTCC and outside providers. (Doc. No. 4 at 3.) Though these circumstances may indeed prove a significant challenge to Plaintiff, they are not especially unusual for a pro se plaintiff, and so the Court cannot find that they constitute exceptional circumstances justifying appointment of counsel from the outset of this case. Plaintiff's Motion to Appoint Counsel (Doc. No. 3) is therefore **DENIED WITHOUT PREJUDICE** to renewal, if warranted, after service of process has been accomplished.

## CONCLUSION

As discussed above, the Court finds that the Complaint states nonfrivolous claims against Defendants CoreCivic, Porter, and Cockrell. Accordingly, the Clerk is **INSTRUCTED** to send Plaintiff a service packet (blank summons and USM 285 form) for each of these three Defendants. Plaintiff **MUST** complete the service packets and return them to the Clerk's Office within **30 DAYS** of the date of this Order. Upon return of the completed service packets, **PROCESS SHALL ISSUE**.

The Court's determination that the Complaint states colorable claims for purposes of this initial screening does not preclude the Court from dismissing any claim at any time for the reasons set forth in 28 U.S.C. § 1915(e)(2), nor does it preclude any Defendant from filing a motion to dismiss any claim under Federal Rule of Civil Procedure 12.

This action is **REFERRED** to the Magistrate Judge to enter a scheduling order for the management of the case, to dispose or recommend disposition of any pretrial motions under 28 U.S.C. §§ 636(b)(1)(A) and (B), and to conduct further proceedings, if necessary, under Rule 72(b) of the Federal Rules of Civil Procedure and the Local Rules of Court.

IT IS SO ORDERED.

_Eli Richardson_
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE