IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| SCOTTIE ALLEN KEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | NO. 3:23-cv-00920 |
| v. | ) | |
| | ) | JUDGE RICHARDSON |
| CORECIVIC, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**MEMORANDUM OPINION**

Pending before the Court[1] is the report and recommendation (Doc. No. 39, "R&R") of the Magistrate Judge, which recommends that the Court deny the motion for summary judgment (Doc. No. 29, "Motion for Summary Judgment") filed by Defendants CoreCivic, Inc. ("CoreCivic"), Lybrunca Cockrell ("Cockrell"), and Jermaris Porter ("Porter") (collectively, "Defendants"). Defendants have filed Objections (Doc. No. 40, "Objections")[2] to the R&R and a memorandum in support of their Objections (Doc. No. 41, "Memorandum"), whereafter Plaintiff filed a response (Doc. No. 42, "Response") to Defendants' Objections. For the reasons stated herein, the Court will adopt in part and decline to adopt in part the R&R.

Below, the Court first will review the relevant factual and procedural background. The Court next will quote the relevant portions of the R&R before then reviewing the respective legal

---

[1] Herein, "the Court" refers to the undersigned District Judge, as opposed to the Magistrate Judge who authored the R&R.

[2] Herein, a given use of the term "Objections" may refer to the document (Doc. No. 40) itself, to the purported objections contained therein (i.e., the "objections" to the R&R contained within the "Objections"), or both.

standards for a district court judge's review of the report and recommendation of a magistrate judge and for a motion for summary judgment generally. The Court then will analyze Defendants' Objections to the R&R and review (as necessary) any portions of the Magistrate Judge's R&R to which Defendants made a proper objection.

BACKGROUND

Plaintiff, Scottie Allen Key, a former inmate at the Trousdale Turner Correctional Center ("TTCC"), filed this *pro se* action alleging that Defendants used excessive force against him and failed to protect him in violation of his Eighth Amendment rights.[3] (Doc. No. 1, "Complaint"). Plaintiff's allegations concern events that allegedly occurred in 2018 when he was placed in protective custody and in January 2022 when he asserts he was targeted by gang members for extortion.

The Magistrate Judge provided a summary of Plaintiff's allegations, which the Court quotes here:[4]

---

[3] As one court within this circuit summarized applicable law, "Claims of excessive force against convicted prisoners should be analyzed under the Eighth Amendment and not the [Fourth or] Fourteenth Amendment." *Hammond v. Lapeer Cnty.*, 133 F. Supp. 3d 899, 919 (E.D. Mich. 2015) (quoting *Sharp v. Kelsey*, 918 F. Supp. 1115, 1122-23 (W.D. Mich. 1996)). While agreeing with this proposition, the Court adds the caveat that actually a claim of excessive force against a state prisoner (like Plaintiff here) *does* technically fall under the Fourteenth Amendment, in the sense and for the reasons set forth in following paragraph.

The Eighth Amendment protects inmates serving sentences of imprisonment after conviction, as Plaintiff was. *See Richmond v. Huq*, 885 F.3d 928, 937 (6th Cir. 2018) ("The Eighth Amendment provides an inmate the right to be free from cruel and unusual punishment."). In the case of state actors like Defendants, Eighth Amendment protections are applicable (when they are applicable) specifically by way of the Fourteenth Amendment. *See Crawford v. Tilley*, 15 F.4th 752, 760 (6th Cir. 2021). In these situations, courts (like *Hammond*) generally speak in terms of "Eighth Amendment" protection without any reference (beyond perhaps an initial reference) to the Fourteenth Amendment.

In summary, Eighth Amendment protection is applicable in the instant case, by way of the Fourteenth Amendment.

[4] Notably, neither party appears to dispute that this is an accurate summary of Plaintiff's *allegations*, but as Defendants note, of relevance at this phase is not what Plaintiff alleges, but instead what the evidence does or does not show. While appreciating this reality, the Court nonetheless provides the summary of Plaintiff's allegations, finding it to be helpful background information.

Plaintiff alleges the following facts. Docket No. 1. In 2018 he was assaulted by multiple gang members, sustained serious injuries, and was placed in protective custody in light of his injuries. Docket No. 1, p. 5. On January 24, 2022, he was assaulted by multiple gang members as a further result of the 2018 incident and in an effort to extort him. Id.

On April 13, 2022, knowing that he had a parole hearing scheduled for the following October, he decided to leave his cell, face the gang members, and therefore stop receiving "write ups" for refusing his cell assignment. Id. He was assigned to a cell occupied by a gang member who would not allow him to remain in the cell and who had treated his previous four cellmates the same way. Id. He left the cell and spent the night in the day room, after which Chief Jermaris Porter returned him to his assigned cell. Id. He was again threatened by his cellmate who told him to "get out" and that he would "get hurt" if he returned. Id. After spending a second night in the day room, he was confronted by Chief Porter and ordered to return to his cell. Id. He objected, stating to Porter that his cellmate would hurt him if he returned. Id. Chief Porter responded, stating that Plaintiff "would rather be hurt by the cellmate than to be hurt by Porter," and "'You don't want me to hurt you.'" Id. When he refused to return to his cell, Chief Porter ordered him up against the wall. Id. Although his feet were spread apart, Chief Porter forcefully did a "leg sweep," forcing his leg farther apart, and resulting in a groin pull and injury to his back. Id. He requested medical attention for the assault but was ignored and denied medical assistance. Id.

On May 4, 2022, he and a new cellmate were robbed and assaulted by two inmate gang members wielding knives. Docket No. 1, p. 6. Unit Manager Lybrunca Cockrell responded to the incident and directed that he be seen for medical attention. Id. at p. 6. When he told Cockrell that another gang-affiliated inmate was trying to extort him to pay "shower security," Cockrell mentioned transferring him to a different unit. However, after Cockrell exited his cell, no staff members came to escort him [sic] the medical unit or to otherwise check in on him. Id. After two days, he left his cell to eat, shower, and use the phone. Id. On May 8, 2022, he was again assaulted by a gang-affiliated inmate. Id. Plaintiff asserts that the assault would not have occurred if Unit Manager Cockrell had kept her word. Id.

On the afternoon of May 15, 2022, he was waiting to use the phone when a gang-affiliated inmate asked him when he would make his "shower security" payment. Id. at p. 6. When he replied that he did not have any money, the inmate attacked him and was soon joined by two other inmates. Id. As a result of the attack, which he warned Unit Manager Cockrell would occur, he suffered pain and an extremely swollen face that was not addressed until the following day when he was taken to Trousdale County Hospital for treatment. Id. When he returned to TTCC, he was placed in protective custody. Id. Plaintiff asserts CoreCivic subjected him to violence at the hands of other inmates, consistent with their "hands-off" approach to gang-related conflicts by refusing to declare particular

inmate gang members "incompatible" with him or to address his repeated complaints of threats associated with gang-enforced "shower security." Id. Plaintiff complains he suffered serious injuries and residual effects of those injuries, including "excruciating" headaches, chronic episodes of blurred vision, permanent facial scars, PTSD, and depression. Id. at pp. 6-7. Plaintiff names as defendants CoreCivic, Inc., Lybrunca Cockrell, and Jermaris Porter. Id. pp. 2-3 He seeks compensatory and punitive damages. Id. at p. 7.

(Doc. No. 39 at 1-3).

PROCEDURAL HISTORY

On August 29, 2023, Plaintiff filed the Complaint, and on initial review the Court concluded that the Plaintiff stated colorable failure-to-protect claims ("Failure-to-Protect Claims") against each of the three Defendants (i.e., CoreCivic, Porter, and Cockrell) and a colorable excessive force claim ("Excessive Force Claim") against Porter. (Doc. No. 8 at 8). Thereafter, Defendants filed their Motion for Summary Judgment. (Doc. No. 29). The Motion for Summary Judgment was supported by an accompanying memorandum of law (Doc. No. 30, "Summary Judgment Brief") and a "Statement of Undisputed Material Facts" (Doc. No. 31, "Statement of Facts"). Because Plaintiff initially failed to provide a response to Defendants' Motion for Summary Judgment, the Magistrate Judge ordered (Doc. No. 37) Plaintiff to show cause "why his claims should not be dismissed for failure to prosecute or for the reasons stated in the Defendant[s'] Motion for Summary Judgment." (*Id.* at 1). Thereafter Plaintiff filed his response (Doc. No. 38) to the Motion for Summary Judgment, but Plaintiff did not file a response to Defendants' Statement of Facts.

Thereafter, the Magistrate Judge issued the R&R (Doc. No. 39), which recommends that the Court deny the Motion for Summary Judgment. As noted above, in response to the R&R Defendants filed the Objections and the Memorandum, whereafter Plaintiff filed his Response (Doc. No. 42) to Defendants' Objections.

<u>THE MAGISTRATE JUDGE'S R&R</u>

The R&R recommends denial of Defendants' Motion for Summary Judgment. (Doc. No. 39 at 12). More specifically, the R&R recommends that the Court deny summary judgment on both Plaintiff's Excessive Force Claim brought against Porter and the Failure-to-Protect Claims brought against all Defendants. (*Id.* at 6-12).

## A. Excessive Force Claim

With respect to the Excessive Force Claim, the R&R recommends that "[s]ummary judgment on this claim should be denied." (Doc. No. 39 at 9). In reaching this conclusion, the R&R states as follows:

> In his declaration, Porter attests that although he does not specifically recall having used any force against Plaintiff "at that time," he would not have intended to cause him harm through any force used beyond what was necessary to achieve compliance and restore order." Docket No. 30, p. 10. He argues Plaintiff cannot establish the subjective component of the excessive force analysis because he cannot point to any evidence indicating that Porter had a malicious or sadistic state of mind at the time of the alleged encounter at issue. Id. Porter argues Plaintiff has produced no evidence showing that he acted maliciously and sadistically to cause harm, aside from Plaintiff's own conclusory allegations that he [Porter] used a leg sweep technique resulting in injury to his [Plaintiff's] groin and knee. Id. He argues Plaintiff has produced no evidence of any serious injury he suffered as a result of Porter's alleged use of force. Id.
>
> "After incarceration, only the unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Whitley v. Albers*, 475 U. S. 312, 319 (1986) (quotation omitted). What constitutes the "unnecessary and wanton infliction of pain" varies based on the alleged constitutional violation. "[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishment Clause, the core judicial inquiry is that set out in *Whitley*: whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U. S. 1, 6-7 112 S. Ct. 995, 117 L. Ed. 2d 156 (1992). Second, "[t]he objective component requires the pain inflicted to be 'sufficiently serious.'" *Williams*, 631 F. 3d at 383 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298, 111 S. Ct. 2321, 115 L. Ed. 2d 271 (1991)). This inquiry turns on "such factors as the need for the application of force, the relationship between the need and the amount of force that was used, and the extent of injury inflicted," from which "inferences may be drawn as to whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the

unjustified infliction of harm as is tantamount to a knowing willingness that it occur." *Whitley*, 475 U. S. at 321.

This is a highly deferential standard. "It does not insulate from review actions taken in bad faith and for no legitimate purpose, but it requires that neither judge nor jury freely substitute their judgment for that of officials who have made a considered choice." *Whitley*, 475 U. S. at 322. "[P]rison administrators should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Hudson*, 503 U. S. at 6 (quotation and alteration omitted). Evidence "that prison officials arguably erred in judgment" in deciding to use even deadly force "falls far short of a showing that there was no plausible basis for [their] belief that this degree of force was necessary." *Whitley*, 475 U. S. at 323. If the evidence shows only "a mere dispute over the reasonableness of a particular use of force or the existence of arguably superior alternatives . . . the case should not go to the jury." *Id*. at 322. Therefore, not every shove or restraint gives rise to a constitutional violation. *Parrish v. Johnson*, 800 F.2d 600, 604 (6th Cir. 1986). "The maintenance of prison security and discipline may require that inmates be subjected to physical contact actionable as assault under common law." *Combs v. Wilkinson*, 315 F.3d 548, 556 (6th Cir. 2002) (citing *Pelfrey v. Chambers*, 43 F.3d 1034, 1037 (6th Cir. 1995)). Prison officials nonetheless violate the Eighth Amendment when their "offending conduct reflects an unnecessary and wanton infliction of pain." *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (cleaned up); *Bailey v. Golladay*, 421 Fed. Appx. 579, 582 (6th Cir. 2011).

There is an objective component and a subjective component to an Eighth Amendment claim. *Santiago v. Ringle*, 734 F.3d 585, 590 (6th Cir. 2013) (citing *Comstock v. McCrary*, 273 F. 3d 693, 702 (6th Cir. 2001)). First, "[t]he subjective component focuses on the state of mind of the prison officials." *Williams*, 631 F. 3d at 383. The court asks, "whether force was applied in a goodfaith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U. S. 1, 7, 112 S. Ct. 995, 117 L. Ed. 2d 156 (1992). Second, "[t]he objective component requires the pain inflicted to be 'sufficiently serious.'" *Williams*, 631 F. 3d at 383 (quoting *Wilson v. Seiter*, 501 U. S. 294, 298, (1991)). This component requires a "contextual" investigation, one that is "responsive to 'contemporary standards of decency.'" *Hudson,* 503 U.S. at 8, (quoting *Estelle v. Gamble,* 429 U.S. 97, 103, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976)). While the extent of a prisoner's injury may help determine the amount of force used by the prison official, it is not dispositive of whether an Eighth Amendment violation has occurred. *Wilkins v. Gaddy,* 559 U.S. 34, 37, 130 S. Ct. 1175, 175 L. Ed. 2d 995 (2010). "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated . . . [w]hether or not significant injury is evident." *Hudson*, 503 U. S. at 9. "Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury." *Id.*

Neither the Plaintiff nor Defendant make compelling arguments on this issue. Defendant Porter argues essentially that he does not recall any of the allegations asserted in the Complaint including any interaction with the Plaintiff as alleged, but that he "would not have intended to cause Key harm through any use of force beyond what was necessary to achieve compliance and restore order." Docket No. 33, p. 2. His failure of recollection however is not the same as a denial. The Plaintiff alleges that immediately prior to the use of force alleged that Defendant Porter made threatening and intimidating statements to him and that the force utilized was unnecessary given that apart from refusing to return to the cell where he was threatened with assault, he was otherwise compliant with Porter's commands. Docket No. 1, p. 5. Further, while courts have regularly construed a leg sweep to be a *de minimis* force, Plaintiff specifically alleges that he suffered injuries to his groin and back for which he was denied medical assistance. Id. Again, Defendant Porter does not deny any of these allegations and neither party provides any supporting evidence for their positions.

The evidence submitted by defendants is generic, boilerplate, and ultimately unhelpful to the court. Notably missing are copies of any Incident Statements and Reports, grievances, or excerpts of Plaintiff's medical records, among other things. On this record, viewing the evidence in the light most favorable to Plaintiff, the Court concludes genuine issues of material fact exist as to this claim, including, but not limited, to whether Porter intended to cause Plaintiff harm through the alleged leg sweep beyond what was necessary to achieve compliance and restore order; whether Porter had a malicious or sadistic state of mind at the time of the alleged encounter at issue; whether Porter acted maliciously and sadistically to cause harm; and whether Plaintiff suffered any serious injury as a result of Porter's alleged use of force. Summary judgment on this claim should be denied.

(Doc. No. 39 at 6-9).

## B. Failure-to-Protect Claims

Second, as it relates to the Failure-to-Protect Claims, the R&R likewise recommends that

"[s]ummary judgment on the [F]ailure-to-[P]rotect [C]laims against these [D]efendants should be

denied." (*Id.* at 12). In reaching this conclusion, the R&R states as follows:

The Eighth Amendment to the United States Constitution proscribes the infliction of "cruel and unusual punishments." The Supreme Court counsels that this amendment imposes upon prison officials the duty to "provide humane conditions of confinement." *Farmer v. Brennan*, 511 U. S. 825, 832, 114 S. Ct. 1970, 128 L. Ed. 2d (1994). That duty, among other things, requires those officials to take reasonable measures to "'protect prisoners from violence at the hands of other prisoners.'" *Id.* (quoting *Cortez-Quinones v. Jimenez-Nettleship*, 842 F. 2d 556, 558 (1st Cir.), *cert. denied*, 488 U. S. 823 (1988)). The Eighth Amendment imposes this duty because being subjected to violent assaults is not "part of the

penalty that criminal offenders pay for their offenses." *See Rhodes v. Chapman*, 452 U. S. 337, 347, 101 S. Ct. 2392, 69 L. Ed. 2d 59 (1981).

To prevail on an Eighth Amendment failure-to-protect claim, inmates must make two showings. First, they must demonstrate that they are "incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U. S. at 834**.** The second requirement concerns the state of mind of the prison official who is being sued. It mandates that the plaintiffs show that the official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. This subjective requirement is necessary because "only the unnecessary and wanton infliction of pain implicates the Eighth Amendment." *Wilson v. Seiter*, 501 U. S. 294, 297 (1991) (cleaned up).

As to CoreCivic, it is well established that section 1983 will not support a claim based on a *respondeat superior* theory of liability. *Polk County v. Dodson*, 454 U. S. 312, 325 (1981); *Monell v. New York City Dept. of Soc. Services,* 436 U.S 658, 694 (1978). Liability under § 1983 requires a causal link to and direct responsibility for the alleged deprivation of rights. *See Monell*, 436 U. S. at 694, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978) (municipality will not be held vicariously liable under § 1983 for injuries inflicted solely by its employees). Rather, a plaintiff seeking to impose such liability is required to identify either an official policy or a widespread custom or practice that caused the plaintiff's injury. *See Board of County Comm'rs of Bryan County, Okl. v. Brown*, 520 U. S. 397, 403-04 (1997). Therefore, to hold an entity liable on a respondeat superior theory, a plaintiff must: (1) identify the policy or custom; (2) connect the policy or custom to the entity; and (3) demonstrate that he incurred injury from the execution of the policy or custom. *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005); *Garner v. Memphis Police Dep't*, 8 F. 3d 358, 364 (6th Cir. 1993). The mere existence of previous complaints does not demonstrate a policy or custom. *See Rogers v. Little Rock*, 152 F.3d 790, 799 (8th Cir. 1998). There must be a showing that the previous complaints have merit. *Mettler v. Whitledge*, 165 F. 3d 1197, 1205 (8th Cir. 1999).

The Defendants' positions on these claims suffer from the same deficiencies as [does] Porter's [arguments on Plaintiff's] excessive force claim. Defendant Cockrell's declaration neither admits or denies the serious and repeated allegations of assault discussed by the Plaintiff in his Complaint. Docket No. 32. Plaintiff asserts that there were multiple violent assaults and threats of assault against him over an extended period of time which he asserts Cockrell was specifically aware of but disregarded. Docket No. 1, pp. 5-6. Given the nature of the Plaintiff's injuries as well as the repeated occurrences, Defendant's denial that she was aware of any threats to Plaintiff's safety at the hands of other inmates is suspect. Further, given the repeated instances alleged by the Plaintiff, a jury could find that there is a custom or practice of disregarding threats of assault by other inmates at Trousdale.

On this record, viewing the evidence in the light most favorable to Plaintiff, the Court concludes genuine issues of material fact exist as to this claim, including, but not limited, as to (1) whether defendants were deliberately indifferent to

ensuring Plaintiff's reasonable safety and security during his incarceration at Trousdale; (2) whether Cockrell and Porter ignored Plaintiff's alleged requests for protection; (3) whether Cockrell and Porter were aware of any threats to Plaintiff's safety with respect to his allegations that he was threatened by other inmates; (4) whether Cockrell and Porter perceived or had reason to perceive that any other inmates presented a danger to Plaintiff; (5) whether Porter and Cockrell disregarded any perceived danger; and (6) whether the alleged deprivations occurred pursuant to an official policy or pervasive widespread custom. Summary judgment on the failure-to-protect claims against these defendants should be denied.

(Doc. No. 39 at 10-12).

<u>LEGAL STANDARD</u>

**A. Legal Standard for the Review of Reports & Recommendations.**

When a magistrate judge issues a report and recommendation regarding a dispositive pretrial matter, the district court judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which a *proper* objection is made. Fed. R. Civ. P. 72(b)(3); 28 U.S.C.A. § 636(b)(1).[5] The district judge may accept, reject, or modify

---

[5] Significantly, and perhaps surprisingly, the statute does not actually direct the district judge to expressly rule on the objections themselves (i.e., expressly sustain or reject the objector's *specific* criticism(s) of what the magistrate judge did). Instead of requiring the district judge to determine *the* validity of the objections to what the magistrate judge did, the statute requires the district judge to make a determination—*de novo*, which inherently means ultimately without reference to whether what the magistrate judge did was objectionable—as to the portion(s) of the report and recommendation to which objection was made. Moreover, since the review of the objected-to portions of the report and recommendation is *de novo*, any critiquing of what the magistrate judge did ultimately would be dicta (albeit relevant and probative dicta to the extent that such critiquing explains the analysis underlying the district judge's determination of the objected-to portions of the R&R). Additionally, district judges in this Circuit not infrequently either decline to rule on (or, to the same effect, deny as moot) particular objections on the specific ground that so doing is unnecessary to rule on the objected-to portion of the report and recommendation. *E.g., Collins v. Bright*, No. 2:13-CV-02987-JPM-CGC, 2021 WL 5205622, at *3 (W.D. Tenn. Nov. 9, 2021) ("[T]his objection does not affect or alter the conclusions of the Magistrate Judge and is overruled as moot."); *Lashuay v. Fornwalt*, No. 1:15-CV-1109, 2017 WL 4160947, at *1 (W.D. Mich. Sept. 20, 2017) ("This Court need not resolve all of the objections," because only some of them needed to be addressed in order to resolve the motion that was the subject of the report and recommendation); *Weatherspoon v. Williams*, No. 2:14-CV-108, 2016 WL 6070994, at *1 (W.D. Mich. Oct. 17, 2016) ("Plaintiff's objections are irrelevant and will be denied."); *Bowers v. Burnett*, No. 1:08-CV-469, 2011 WL 1047343, at *2 n.1 (W.D. Mich. Mar. 18, 2011) (noting that the Court need not resolve an objection to the extent that the objector's position on the R&R has other fatal deficiencies); *Powell v. Alcoa High Sch.*, No. 3:10-CV-212, 2010 WL 2598260, at *2 (E.D. Tenn. June 24, 2010) ("Because this objection is irrelevant to [the magistrate judge's] recommendations, it is hereby overruled.") *Cline v. Kelly*, No. 09CV859, 2010 WL 1006529, at *9 n.1 (N.D. Ohio Mar. 16, 2010) ("The Court acknowledges [the petitioner's] objection, but need not resolve it

the recommended disposition, review further evidence, or return the matter to the magistrate judge with instructions. *Id.*

A district judge is not required to review, under a *de novo* or any other standard, those aspects of a report and recommendation to which no proper objection is made. *Ashraf v. Adventist Health Sys./Sunbelt, Inc.*, 322 F. Supp. 3d 879, 881 (W.D. Tenn. 2018); *Benson v. Walden Sec.*, No. 3:18-CV-0010, 2018 WL 6322332, at *3 (M.D. Tenn. Dec. 4, 2018) (citing *Thomas v. Arn*, 474 U.S. 140, 150 (1985)).

"Only 'specific written objections' to the magistrate judge's proposed factual findings and legal conclusions are 'proper' under Federal Rule of Civil Procedure 72(b)." *Frias v. Frias*, No. 2:18-CV-00076, 2019 WL 549506, at *2 (M.D. Tenn. Feb. 12, 2019). Furthermore, Local Rule 72.02(a) provides that such objections must be written and must state with particularity the specific portions of a magistrate judge's report or proposed findings or recommendations to which an objection is made. L.R. 72.02(a); *see also See* Fed. R. Civ. P. 72(b)(2). Significantly, "[t]he filing of vague, general, or conclusory objections does not meet the requirement of specific objections and is tantamount to a complete failure to object. Moreover, an objection that does nothing more than state a disagreement with a magistrate's suggested resolution, or simply summarizes what has been presented before, is not an objection as that term is used in this context." *Frias*, 2019 WL 549506, at *2 (internal citations and quotations omitted). In other words, "the district court need not provide *de novo* review," or any other type of review, "where the objections are 'frivolous, conclusive or general,'" and therefore improperly made. *Mira v. Marshall*, 806 F.2d 636, 637 (6th

_____

because that specific fact is not relevant to the resolution of any of the grounds for relief set forth in [the] Petition" that the magistrate judge had recommended be denied.). For these reasons, when conducting the required *de novo* review herein, the Court does not dwell much specifically on what the Magistrate Judge did or did not do and whether what the Magistrate Judge did or did not do was appropriate.

Cir. 1986) (per curiam) (quoting *Nettles v. Wainwright*, 677 F.2d 404, 410 n.8 (5th Cir. 1982)). *See also Ashraf*, 322 F. Supp. 3d at 881 ("The district court is not required to review—under a *de novo* or any other standard—those aspects of the report and recommendation to which no objection is made." (citation omitted)); *Benson*, 2018 WL 6322332, at *3 (same).

**B.      Legal Standard for Summary Judgment.**

Summary judgment is appropriate where there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). In other words, even if genuine, a factual dispute that is irrelevant under applicable law is of no value in defeating a motion for summary judgment. *See id.* at 248. On the other hand, "summary judgment will not lie if the dispute about a material fact is 'genuine[.]'" *Id.*

A fact is "material" within the meaning of Rule 56(c) "if its proof or disproof might affect the outcome of the suit under the governing substantive law." *Reeves v. Swift Transp. Co.*, 446 F.3d 637, 640 (6th Cir. 2006) (citing *Anderson*, 477 U.S. at 248), *abrogated on other grounds by Young v. United Parcel Serv.*, 575 U.S. 206 (2015). A genuine dispute of material fact exists if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Harris v. Klare*, 902 F.3d 630, 634-35 (6th Cir. 2018).

The party bringing the summary-judgment motion has the initial burden of identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. *Pittman v. Experian Info. Sols., Inc.*, 901 F.3d 619, 627-28 (6th Cir. 2018) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). Alternatively, the moving party may meet its initial burden

by otherwise "show[ing]"—even without citing materials of record—that the nonmovant "cannot produce admissible evidence to support the [existence of a] material fact," Fed. R. Civ. P. 56(c)(1)(B), for example, the existence of an element of a nonmovant plaintiff's claim. If the summary-judgment movant meets its initial burden, then in response the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." *Pittman*, 901 F.3d at 628 (quoting *Anderson*, 477 U.S. at 250).[6] Importantly, "[s]ummary judgment for a defendant [that has met its initial burden as the movant] is appropriate when the plaintiff 'fails to make a showing sufficient to establish the existence of an element essential to [her] case, and on which [she] will bear the burden of proof at trial.'" *Cleveland v. Pol'y Mgmt. Sys. Corp.*, 526 U.S. 795, 805-06 (1999) (quoting *Celotex,* 477 U.S. at 322). *See also Overstreet v. Lexington-Fayette Urb. Cnty. Gov't*, 115 F. App'x 806, 811 (6th Cir. 2004) ("The non-moving party may not rely on mere allegations and assertions in his pleadings, but rather must present specific facts that show that there is some material issue warranting a trial. If the non-moving party cannot meet this burden, summary judgment is appropriate." (citing *Nichols v. Moore,* No. 03-74313, 2004 WL 2039356, at *3 (E.D. Mich. Sept. 3, 2004))).

Any party asserting that a fact cannot be or genuinely is disputed (*i.e.*, any party seeking summary judgment and any party opposing summary judgment, respectively) can support the assertion either by: (a) citing to materials in the record, including, but not limited to, depositions, documents, affidavits, or declarations, Fed. R. Civ. P. 56(c)(1)(A), or (b) "showing" (i) that the adverse party cannot produce admissible evidence to raise a genuine dispute as to that fact or (ii) that contrary to the claim of the adverse party, the materials cited by the adverse party do not

---

[6] Courts (appropriately) at times refer interchangeably to (i) a party being able (or unable) to raise a genuine issue as to fact and (ii) a reasonable jury being able (or unable) to find in the party's favor on that fact. This Court does likewise herein.

actually establish the absence or presence (as the case may be) of a genuine dispute as to that fact. Fed. R. Civ. P. 56(c)(1)(B).

In considering a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party. *Tlapanco v. Elges*, 969 F.3d 638, 647 (6th Cir. 2020) (citing *Anderson*, 477 U.S. at 248). Likewise, the "court should view the facts and draw all reasonable inferences in favor of the non-moving party." *Pittman*, 901 F.3d at 628 (citing *Matushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). Credibility judgments and weighing of evidence are improper. *Hostettler v. College of Wooster*, 895 F.3d 844, 852 (6th Cir. 2018).

As noted above, where there is a genuine dispute as to any material fact, summary judgment is not appropriate. *Id*. The court determines whether sufficient evidence has been presented to make the issue of fact a proper jury question. *Id*. The mere existence of a scintilla of evidence in support of the non-moving party's position will be insufficient to survive summary judgment; rather, there must be evidence upon which the jury could reasonably find for the non-moving party. *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003).

A defendant-movant cannot meet its initial burden on a motion for summary judgment merely by *claiming* that the plaintiff lacks evidence and essentially challenging the plaintiff to show otherwise; a defendant-movant must—by pointing to materials of record or otherwise—*show* (presumptively, subject to the plaintiff's response) that the plaintiff could not prove his claim by a preponderance. *See* Fed. R. Civ. P. 56(c)(1).[7] In other words, the defendant-movant must produce

---

[7] Some cases make the point that the movant is not required to provide evidence (or otherwise show) that the non-movant has *no* evidence. *See, e.g.*, *O.M.A., S.r.l. v. Simon DeYoung Corp.*, No. 1:10CV0861, 2013 WL 7210503, at *3 (N.D. Ohio Mar. 12, 2013) ("[A summary judgment] movant in federal court is not required to . . . provide evidence to show that his opponent has no evidence"), *R&R adopted in part, rejected in part on other grounds*, No. 1:10 CV 00861, 2014 WL 587171 (N.D. Ohio Feb. 14, 2014); *Goldcorp, Inc. v. United States*, No. 00-75043, 2002 WL 551042, at *6 (E.D. Mich. Mar. 27, 2002) ("At any rate,

evidence *tending to show* (though not necessarily *conclusively showing*) that the plaintiff cannot raise a genuine issue as to any material fact.[8] *Nickols v. Morris*, 705 F. Supp. 2d 579, 584-85 (N.D. Tex. 2010) ("The party moving for summary judgment has the initial burden of informing the Court of the basis for his motion and producing evidence which tends to show that no genuine issue as to any material fact exists and that he is entitled to judgment as a matter of law."), *aff'd*, 419 F. App'x 534 (5th Cir. 2011).

<u>ANALYSIS OF DEFENDANTS' OBJECTIONS AND REVIEW OF THE R&R</u>

Here, Defendants filed Objections to the R&R, whereby Defendants make three primary objections. First, Defendants assert that "[b]ecause [Plaintiff] did not submit any actual evidence in response to Defendants' Motion for Summary Judgment and in particular did not properly respond to Defendants' Statement of . . . Facts with citations to evidence in the record, the facts in Defendants' Statement of . . . Facts should have been deemed undisputed" ("First Objection"). (Doc. No. 41 at 8).[9] Second, Defendants assert that "[t]he evidence submitted by Defendants in

---

even if [the] affidavit were altogether stricken from the record, it appears that the Government still would be entitled to summary judgment in its favor. After all, this affidavit has been provided merely to prove a negative: namely, that there is no evidence that the IRS ever received the protective claim allegedly sent by Plaintiff on or before September 15, 1995. Presumably, then, the Government could have simply asserted this proposition in its brief, and left it to Plaintiff to introduce evidence calling this issue into question."). The Court does not disagree with that, but it does disagree with any further suggestion that the movant is not required to affirmatively show that the non-movant lacks sufficient evidence for the factfinder to decide in the non-movant's favor; the movant does need to make such a showing, and usually such showing would need to be done by citing to materials in the record (even if those materials are not themselves required to be admissible under the Federal Rules of Evidence).

[8] Notably, a defendant-movant typically can show that there is no genuine issue as to any material fact by showing that there is no genuine issue as to the existence of a fact (usually, the element of a claim) that absolutely needs to exist for the plaintiff to prevail. If the defendant-movant can make this showing, all other facts become immaterial (because the plaintiff necessarily will suffer summary judgment anyway), and thus it can be said that the plaintiff (being unable to show a genuine issue as to *one* material fact) cannot raise a genuine issue as to *any* material fact.

[9] As noted above, Defendants' grievance here is that Plaintiff did not submit any evidence *in response to the Motion for Summary Judgment*. As set forth below, this grievance is well-taken. What is not well taken is any suggestion in Defendants' Summary Judgment Brief that a defendant-movant can rely successfully

connection with their Motion for Summary Judgment, which should have been deemed undisputed, shows that there is no genuine issue for trial on [Plaintiff's] [F]ailure to [P]rotect [C]laim[s]," and that "[t]he Magistrate Judge thus improperly recommended denial of summary judgment on that claim" ("Second Objection"). (*Id*). Finally, Defendant concludes by asserting that "the undisputed facts show that Porter lacked the requisite state of mind with respect to any alleged use of force against [Plaintiff], and the Magistrate Judge incorrectly recommended denial of summary judgment as to th[e] [Excessive Force C]laim" ("Third Objection"). (*Id.* at 15). The Court will address each objection in turn.

### A. First Objection

Via their First Objection, Defendants assert that "the statements that are contained in Defendants' Statement of . . . Facts should have been deemed undisputed" because Plaintiff's Response "does not contain appropriate citations to the record," and that the "Magistrate Judge, however, did not appear to deem those facts undisputed and instead improperly relied on unsworn allegations in [Plaintiff's] Complaint and in his summary judgment Response in recommending denial of summary judgment." (Doc. No. 41 at 6). Because the First Objection is a specific, written, and proper objection, the Court will conduct a *de novo* review of the portion of the R&R that the First Objection challenges. Having conducted such *de novo* review, the Court agrees that Defendants' Statement of Facts should have been deemed undisputed.

---

on the mere assertions that (supposedly) the plaintiff "cannot point to any evidence" or that "there simply is no evidence" to support an essential element of the plaintiff's claim. The reason a defendant-movant cannot rely on such assertions standing alone is that no plaintiff has any obligation to point to any evidence of anything *unless and until* the defendant-movant affirmatively has shifted—via its *own* showing (which typically would be made by pointing to evidence)—the burden to the plaintiff to point to evidence to adequately support the plaintiff's claims. To their credit, Defendants later indicated—in language from page 11 of their Memorandum, (Doc. No. 41 at 11), that the Court quotes below—that they do understand this important principle.

First, although Plaintiff eventually filed a Response in opposition to Defendants' Motion for Summary Judgment, that Response did not include a response directly addressing Defendants' Statement of Facts. Notably, "Local Rule 56.01(c)[10] requires that the non-moving party file a specific response to the moving party's [statement of undisputed material facts]. Plaintiff's failure to respond triggers the application of Local Rule 56.01(f), which provides that a non-moving party's failure to timely respond to the moving party's statement of undisputed material facts shall cause the facts asserted in the statement of undisputed material facts to be deemed undisputed for the purposes of summary judgment." *Middlebrooks v. Helton*, No. 3:23-CV-00054, 2025 WL 790947, at *5 (M.D. Tenn. Mar. 11, 2025), *report and recommendation adopted*, No. 3:23-CV-00054, 2025 WL 1355680 (M.D. Tenn. May 9, 2025). *Accord Amodio v. Ocwen Loan Servicing, LLC*, No. 3:18-CV-00811, 2019 WL 2162944, at *2 (M.D. Tenn. May 17, 2019) ("Under Local Rule 56.01(f), if a non-moving party fails to respond to the moving party's statement of undisputed material facts, 'the asserted facts shall be deemed undisputed for purposes of summary judgment.'").

Although *pro se* litigants are entitled to some leniency, "'the lenient treatment generally accorded to pro se litigants has limits.' Even a *pro se* plaintiff must comply with federal local rules of procedure." *Jawara v. Suntrust Bank*, No. 3:15-CV-00305, 2016 U.S. Dist LEXIS 63742, at *3 (M.D. Tenn. May 12, 2016) (quoting *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996)). *Accord Vallas v. Lines*, No. 3:22-CV-1076, 2023 U.S. Dist. LEXIS 132462, at *7 (M.D. Tenn. Mar. 22, 2023) ("[P]ro se Plaintiffs have a duty to comply with the Federal Rules of Civil Procedure, Local Rules and Orders of this Court."); *Redus v. Revenue Cycle Serv. Ctr., LLC.*, No.

---

[10] As is relevant here, at the time Defendants' Motion for Summary Judgment and all corresponding filings were filed, the version of the Local Rules in effect was dated January 24, 2020. The Court will rely on (and cite) this version of the Local Rules when considering Defendants' Motion for Summary Judgment.

3:22-CV-01029, 2025 U.S. Dist. LEXIS 154830, at *15-16 (M.D. Tenn. Aug. 11, 2025) ("*Pro se* parties are not excused from complying with the Court's procedural rules." (first citing *McNeil v. United States*, 508 U.S. 106, 113 (1993) (noting that the Supreme Court has "never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel"); then citing *Matthews v. Copeland*, 286 F. Supp. 3d 912, 916 (M.D. Tenn. 2017) ("A litigant, whether proceeding *pro se* or through counsel, ignores local rules at his or her peril.")))). Accordingly, the Court finds that Defendants' Statement of Facts must be treated as undisputed—for purposes of ruling on the Motion for Summary Judgment—because Plaintiff failed to specifically and directly respond to Defendants' Statement of Facts, as required.

Even if the Court were to construe Plaintiff's Response as an attempt to respond both to the Motion for Summary Judgment generally and to Defendants' Statement of Facts specifically—a construction that actually does not appear to be warranted—that attempt would be unavailing because Plaintiff's Response does not contain citations to the record as required. As Defendants correctly point out, "Federal Rule of Civil Procedure 56(c) enumerates the requirements for disputing facts that are contained within a statement of undisputed material facts." (Doc. No. 41 at 6). More specifically, Federal Rule of Civil Procedure 56(c) states:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> > (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> >
> > (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). Importantly, when attempting to dispute facts, plaintiffs "cannot merely rely on the allegations in their complaint to defeat summary judgment."[11] *Tullis v. UMB Bank, N.A.*, 423 F. App'x 567, 570 (6th Cir. 2011) (citing Fed. R. Civ. P. 56(e)(2)). *Accord Hall v. Wal-Mart E., L.P.*, No. 3-13-0144, 2015 WL 5388242, at *2 (M.D. Tenn. Sept. 14, 2015) ("To defeat a motion for summary judgment, a plaintiff cannot rely on the conclusory allegations of her Complaint. Rather, she must come forward with probative evidence tending to support the Complaint." (citing *Anderson,* 477 U.S. at 256)). Notably, Plaintiff was informed of this in the scheduling order issued on January 22, 2024, wherein the Court stated:

> In responding to the motions for summary judgment, plaintiff may not just rely on the complaint. Plaintiff must show there is a material dispute of fact with citation to the record, affidavits or other matter of evidence.
> Plaintiff should read and comply with Federal Rule of Civil Procedure 56 and Local Rule 56.01.

(Doc. No. 22 at 3). And as for Local Rule 56.01, it provides in pertinent part:

> Any party opposing the motion for summary judgment must respond to each fact set forth by the movant by either:
>
> **(1)** Agreeing that the fact is undisputed;
>
> **(2)** Agreeing that the fact is undisputed for the purpose of ruling on the motion for summary judgment only; or
>
> **(3)** Demonstrating that the fact is disputed. Each disputed fact must be supported by specific citation to the record.
>
> The response must be made on the document provided by the movant or on another document in which the non- movant has reproduced the facts and citations verbatim as set forth by the movant. In either case, the non-movant must make a response to each fact set forth by the movant immediately below each fact set forth by the movant. Such response must be filed with the papers in opposition to the motion for summary judgment. In addition, the non-movant's response may contain a

---

[11] Notably, "although a plaintiff can rely on a verified complaint in response to a motion for summary judgment," *White v. Erdos*, No. 21-3154, 2022 WL 517273, at *2 (6th Cir. Jan. 26, 2022) (citation omitted), the Complaint is not verified in this case. (*See* Doc. No. 1; Doc. No. 41 at 3 (discussing how the Complaint is not verified in this case)).

concise statement of any additional facts that the non-movant contends are material and as to which the non-movant contends there exists a genuine issue to be tried. Each such disputed fact must be set forth in a separate, numbered paragraph with specific citations to the record supporting the contention that such fact is in dispute. A copy of the statement of additional disputed facts must also be provided to opposing counsel in an editable electronic format. *Pro se* parties are excused only from providing a copy of the statement of additional disputed material facts to opposing counsel in an editable electronic format, and such *pro se* parties must otherwise comply with the requirements of this section.

(e) Response to Statement of Facts. The respondent must also respond to the

LR 56.01(c).

In the present case, the factual assertions made by Plaintiff in his Response are not supported by any citation at all. Instead, Plaintiff makes allegations without any substantiating evidence, and although Plaintiff asserts that he has "'proof' that [his] civil rights were violated multiple times at TTTC," (Doc. No. 38 at 4), Plaintiff provided none of this "proof" to the Court for consideration. Importantly, if Plaintiff has "proof"—as he so alleges—the time to provide such evidence was via his Response, but no such provision occurred (either then or, for that matter, any time thereafter). Therefore, the Response that was filed does not successfully call into dispute any of the factual assertions made in Defendants' Statement of Facts.

In sum, and for the reasons outlined above, the Court finds that Defendants' Statement of Facts should be treated as undisputed on the instant *de novo* review, and the Court will proceed with its analysis accordingly.

**B. Second Objection**

Via their Second Objection, Defendants assert that "[t]he evidence submitted by Defendants in connection with their Motion for Summary Judgment, which should have been deemed undisputed, shows that there is no genuine issue for trial on [Plaintiff's] [F]ailure to [P]rotect [C]laim[s]," and that "[t]he Magistrate Judge thus improperly recommended denial of summary judgment on [those] claim[s]." (Doc. No. 41 at 8). Because the Second Objection is a

specific, written, and proper objection, the Court will conduct a *de novo* review of the portion of the R&R that the Second Objection challenges.

Neither party objected to the Magistrate Judge's explanation of the applicable legal standard for a failure-to-protect claim. Accordingly, the Court adopts and approves that explanation and provides it here for reference:

> The Eighth Amendment to the United States Constitution proscribes the infliction of "cruel and unusual punishments." The Supreme Court counsels that this amendment imposes upon prison officials the duty to "provide humane conditions of confinement." *Farmer v. Brennan*, 511 U. S. 825, 832, 114 S. Ct. 1970, 128 L. Ed. 2d (1994). That duty, among other things, requires those officials to take reasonable measures to "'protect prisoners from violence at the hands of other prisoners.'" *Id.* (quoting *Cortez-Quinones v. Jimenez-Nettleship*, 842 F. 2d 556, 558 (1st Cir.), *cert. denied*, 488 U. S. 823 (1988)). The Eighth Amendment imposes this duty because being subjected to violent assaults is not "part of the penalty that criminal offenders pay for their offenses." *See Rhodes v. Chapman*, 452 U. S. 337, 347, 101 S. Ct. 2392, 69 L. Ed. 2d 59 (1981).

> To prevail on an Eighth Amendment failure-to-protect claim, inmates must make two showings. First, they must demonstrate that they are "incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U. S. at 834. The second requirement concerns the state of mind of the prison official who is being sued. It mandates that the plaintiffs show that the official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. This subjective requirement is necessary because "only the unnecessary and wanton infliction of pain implicates the Eighth Amendment." *Wilson v. Seiter*, 501 U. S. 294, 297 (1991) (cleaned up).

> As to CoreCivic, it is well established that section 1983 will not support a claim based on a *respondeat superior* theory of liability. *Polk County v. Dodson*, 454 U. S. 312, 325 (1981); *Monell v. New York City Dept. of Soc. Services,* 436 U.S 658, 694 (1978). Liability under § 1983 requires a causal link to and direct responsibility for the alleged deprivation of rights. *See Monell*, 436 U. S. at 694, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978) (municipality will not be held vicariously liable under § 1983 for injuries inflicted solely by its employees). Rather, a plaintiff seeking to impose such liability is required to identify either an official policy or a widespread custom or practice that caused the plaintiff's injury. *See Board of County Comm'rs of Bryan County, Okl. v. Brown*, 520 U. S. 397, 403-04 (1997). Therefore, to hold an entity liable on a respondeat superior theory, a plaintiff must: (1) identify the policy or custom; (2) connect the policy or custom to the entity; and (3) demonstrate that he incurred injury from the execution of the policy or custom.

*Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005); *Garner v. Memphis Police Dep't*, 8 F. 3d 358, 364 (6th Cir. 1993). The mere existence of previous complaints does not demonstrate a policy or custom. *See Rogers v. Little Rock*, 152 F.3d 790, 799 (8th Cir. 1998). There must be a showing that the previous complaints have merit. *Mettler v. Whitledge*, 165 F. 3d 1197, 1205 (8th Cir. 1999).

(Doc. No. 39 at 10-11).

As discussed above, Plaintiff brought his Failure-to-Protect Claims against all three Defendants: CoreCivic, Cockrell, and Porter. Via their Motion for Summary Judgment, Defendants seek summary judgment on the failure-to-protect claim brought against CoreCivic, and the failure-to-protect claims brought against the individual Defendants sued in their individual capacity (i.e., Cockrell and Porter). The Court will address each request in turn.

First, with respect to the failure-to-protect claim brought against CoreCivic, Defendants seek summary judgment asserting that—to prevail—"[Plaintiff] must establish that CoreCivic has an official policy or a pervasive, widespread custom of failing to provide inmates with protection from threats by other inmates," but that "[Plaintiff] cannot establish as much because relevant policies and customs mandate that CoreCivic provide inmates with adequate safety and security," meaning "summary judgment on [Plaintiff's] Eighth Amendment claim against CoreCivic is warranted." (Doc. No. 29 at 2). The R&R recommended denial of summary judgment finding that "genuine issues of material fact exist" as to "whether the alleged deprivations occurred pursuant to an official policy or pervasive widespread custom." (Doc. No. 39 at 11-12). Defendants object to this conclusion. (Doc. No. 41 at 8-11).

Via its Statement of Facts, Defendants state that "[r]elevant policies are designed and intended to ensure that all inmates at Trousdale receive protection from threats by other inmates," (Doc. No. 31 at ¶ 1 (citing Doc. No. 34 at ¶ 4)), and that "[c]ustoms relevant to [Plaintiff's] claims in this litigation mandate that inmates at Trousdale receive protection from threats by other

inmates," (*id.* at ¶ 5 (citing Doc. No. 34 at ¶ 8)). Notably, and as discussed above, these factual assertions are undisputed for purposes of ruling on the Motion for Summary Judgment. As Defendants aptly put it, "Because CoreCivic offered evidence establishing that it does not have 'a custom of tolerance or acquiescence of federal rights violations,' *Thomas*, 398 F.3d at 429, [Plaintiff] was required present '"significant probative evidence"' in rebuttal to survive summary judgment." (Doc. No. 41 at 11 (quoting *Napier v. Laurel Cnty.,* 636 F.3d 218, 225 (6th Cir. 2011) (quoting *Anderson*, 477 U.S. at 248))). But Plaintiff provided no such evidence. The unsworn and unsupported allegations made in the Complaint and in Plaintiff's response (Doc. No. 38) to Defendants' Motion for Summary Judgment do not suffice to meet this burden. Therefore, the Court finds that—as it relates to the failure-to-protect claim brought against CoreCivic—the Motion for Summary Judgment should be granted. So, the Court will decline to adopt the portion of the R&R recommending denial of the Motion for Summary Judgment on the failure-to-protect claim against CoreCivic in particular.

Second, with respect to the failure-to-protect claims brought against Cockrell and Porter, Defendants seek summary judgment asserting that "undisputed facts demonstrate that Cockrell and Porter had no actual knowledge of any threat to [Plaintiff's] safety and security and did not consciously disregard any such threat, and [Plaintiff] did not submit any competent evidence rebutting those facts." (Doc. No. 41 at 14). Notably, Paragraph 6 of Defendants' Statement of Facts—which (for the reasons stated above) the Court is treating as undisputed for purposes of ruling on this Motion for Summary Judgment—states:

> Defendants did not ignore [Plaintiff's] alleged requests for protection, were not aware of any threats to [Plaintiff's] safety with respect to his allegations that he was threatened by other inmates at Trousdale, did not perceive or have reason to perceive that any other Trousdale inmates presented a danger to [Plaintiff], and did not disregard any perceived danger. (Cockrell Dec. ¶¶ 3-6; Porter Dec. ¶¶ 3-6).

(Doc. No. 31 at ¶ 6). This evidence becomes relevant with regard to the second requirement of a failure-to-protect claim, i.e., that the official must know of and disregard an excessive risk to inmate health or safety. *Cf Farmer*, 511 U.S. at 834. The aforementioned evidence shows that Cockrell and Porter did not know of any threats to Plaintiff's safety, nor did they disregard any such threats, which is something Plaintiff must prove to sustain his failure-to-protect claims. Because—as discussed above—Plaintiff failed to provide any evidence contradicting the aforementioned factual assertions, they are treated as undisputed. Furthermore, those undisputed facts show that Plaintiff cannot establish the subjective requirement of his failure-to-protect claims, meaning that Defendants Cockrell and Porter are entitled to summary judgment as it relates to the failure-to-protect claims brought against them. Therefore, the Court finds that with respect to the failure-to-protect claims brought against Cockrell and Porter, the Motion for Summary Judgment should be granted. So, the Court will decline to adopt the portion of the R&R recommending denial of the Motion for Summary Judgment with respect to the failure-to-protect claims brought against Cockrell and Porter in particular.

In sum, the Court will decline to adopt the portion of the R&R recommending denial of the Motion for Summary Judgment with respect to the Failure-to-Protect Claims. Instead the Court will grant the Motion for Summary Judgment with respect to the Failure-to-Protect Claims.

### C. Third Objection

Finally, via their Third Objection, Defendants assert that "the undisputed facts show that Porter lacked the requisite state of mind with respect to any alleged use of force against [Plaintiff], and [that] the Magistrate Judge incorrectly recommended denial of summary judgment as to th[e] [Excessive Force C]laim." (Doc. No. 41 at 15). Because the Third Objection is a specific, written,

and proper objection, the Court will conduct a *de novo* review of the portion of the R&R that the Third Objection challenges.

Neither party objected to the Magistrate Judge's explanation of the applicable legal standard for an excessive force claim. Accordingly, the Court adopts and approves that explanation and provides it here for reference:

"After incarceration, only the unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Whitley v. Albers*, 475 U. S. 312, 319 (1986) (quotation omitted). What constitutes the "unnecessary and wanton infliction of pain" varies based on the alleged constitutional violation. "[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishment Clause, the core judicial inquiry is that set out in *Whitley*: whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U. S. 1, 6-7 112 S. Ct. 995, 117 L. Ed. 2d 156 (1992). Second, "[t]he objective component requires the pain inflicted to be 'sufficiently serious.'" *Williams*, 631 F. 3d at 383 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298, 111 S. Ct. 2321, 115 L. Ed. 2d 271 (1991)). This inquiry turns on "such factors as the need for the application of force, the relationship between the need and the amount of force that was used, and the extent of injury inflicted," from which "inferences may be drawn as to whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." *Whitley*, 475 U. S. at 321.

This is a highly deferential standard. "It does not insulate from review actions taken in bad faith and for no legitimate purpose, but it requires that neither judge nor jury freely substitute their judgment for that of officials who have made a considered choice." *Whitley*, 475 U. S. at 322. "[P]rison administrators should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Hudson*, 503 U. S. at 6 (quotation and alteration omitted). Evidence "that prison officials arguably erred in judgment" in deciding to use even deadly force "falls far short of a showing that there was no plausible basis for [their] belief that this degree of force was necessary." *Whitley*, 475 U. S. at 323. If the evidence shows only "a mere dispute over the reasonableness of a particular use of force or the existence of arguably superior alternatives . . . the case should not go to the jury." *Id*. at 322. Therefore, not every shove or restraint gives rise to a constitutional violation. *Parrish v. Johnson*, 800 F.2d 600, 604 (6th Cir. 1986). "The maintenance of prison security and discipline may require that inmates be subjected to physical contact actionable as assault under common law." *Combs v. Wilkinson*, 315 F.3d 548, 556 (6th Cir. 2002) (citing

*Pelfrey v. Chambers*, 43 F.3d 1034, 1037 (6th Cir. 1995)). Prison officials nonetheless violate the Eighth Amendment when their "offending conduct reflects an unnecessary and wanton infliction of pain." *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (cleaned up); *Bailey v. Golladay*, 421 Fed. Appx. 579, 582 (6th Cir. 2011).

There is an objective component and a subjective component to an Eighth Amendment claim. *Santiago v. Ringle*, 734 F.3d 585, 590 (6th Cir. 2013) (citing *Comstock v. McCrary*, 273 F. 3d 693, 702 (6th Cir. 2001)). First, "[t]he subjective component focuses on the state of mind of the prison officials." *Williams*, 631 F. 3d at 383. The court asks, "whether force was applied in a goodfaith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U. S. 1, 7, 112 S. Ct. 995, 117 L. Ed. 2d 156 (1992). Second, "[t]he objective component requires the pain inflicted to be 'sufficiently serious.'" *Williams*, 631 F. 3d at 383 (quoting *Wilson v. Seiter*, 501 U. S. 294, 298, (1991)). This component requires a "contextual" investigation, one that is "responsive to 'contemporary standards of decency.'" *Hudson*, 503 U.S. at 8, (quoting *Estelle v. Gamble,* 429 U.S. 97, 103, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976)). While the extent of a prisoner's injury may help determine the amount of force used by the prison official, it is not dispositive of whether an Eighth Amendment violation has occurred. *Wilkins v. Gaddy,* 559 U.S. 34, 37, 130 S. Ct. 1175, 175 L. Ed. 2d 995 (2010). "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated . . . [w]hether or not significant injury is evident." *Hudson*, 503 U. S. at 9. "Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury." *Id.*

(Doc. No. 39 at 6-8). Defendants seek summary judgment on the Excessive Force Claim, asserting that Plaintiff cannot establish the subjective component, i.e., that "force was applied in a goodfaith effort to maintain or restore discipline, [rather than] maliciously and sadistically to cause harm." *Hudson*, 503 U. S. at 7. More specifically, in their Motion for Summary Judgment, Defendants argue as follows:

To hold Porter liable under the Eighth Amendment on an excessive force theory, [Plaintiff] must prove that the use of force at issue was done maliciously and sadistically to cause harm. [Plaintiff] cannot meet this taxing standard because any use of force at issue would have been applied in a good-faith effort to maintain or restore discipline. Therefore, summary judgment on [Plaintiff's] Eighth Amendment excessive force claim against Porter is warranted.

(Doc. No. 29 at 2). As to that last sentence, the Magistrate Judge disagreed, finding:

> [G]enuine issues of material fact exist as to th[e Excessive Force C]laim, including, but not limited, to whether Porter intended to cause Plaintiff harm through the alleged leg sweep beyond what was necessary to achieve compliance and restore order; whether Porter had a malicious or sadistic state of mind at the time of the alleged encounter at issue; whether Porter acted maliciously and sadistically to cause harm; and whether Plaintiff suffered any serious injury as a result of Porter's alleged use of force.

(Doc. No. 39 at 9). In reaching such findings, the R&R recommended denial of summary judgment on the Excessive Force Claim. (*Id.*).

Having conducted a *de novo* review of whether genuine issues of material fact exist as to Plaintiff's Excessive Force Claim, the Court finds (as did the Magistrate Judge) that there are such genuine issues and that therefore summary judgment on that claim is precluded. In their Objections, Defendants argue that summary judgment should be granted as to this claim because "Porter attested that he *did not* act maliciously or sadistically to cause [Plaintiff] harm and that any use of force would have been done in a good faith effort to restore order[.]" (Doc. No. 40 at 2 (emphasis added)). But this is a mischaracterization of what Porter attested to. Of relevance is Paragraph 7 of Defendants' Statement of Facts, which states as follows:

> While Porter does not specifically recall having used any force against [Plaintiff] at the time alleged in the Complaint, he would not maliciously or sadistically have intended to cause [Plaintiff] harm through any force used beyond what was necessary to achieve compliance as part of a good faith effort to maintain or restore discipline. (Porter Dec. ¶¶ 7-10).

(Doc. No. 31 at ¶ 7). Neither Paragraph 7 nor Porter's cited declaration claim that Porter *did not* act maliciously; instead they merely claim that Porter: (i) does not recall acting against Plaintiff at the time alleged in the Complaint, at least not in the manner alleged in the Complaint (i.e., with *force*); and (ii) that if (hypothetically) Porter *had* acted with force as alleged, then he (hypothetically) "would not" have acted with the subjective mental state required to establish that claim. Even if these claimed facts (which in part are merely hypothetical "facts") are accepted as

true, they would be insufficient to carry Defendants' initial burden as the summary-judgment movant. As discussed above, to carry their initial burden, Defendants were required to produce evidence *tending to show* (though not necessarily *conclusively showing*) that Plaintiff cannot raise a genuine issue as to any material fact. The Court finds that the factual assertions made in Paragraph 7 of Defendants' Statement of Facts and in Porter's cited declaration do not tend to suggest that Plaintiff cannot raise a genuine issue as to Porter's subjective mental state. Instead, the Court finds that the factual assertions standing alone are conclusory and provide little information (if any at all) about Porter's *actual* subjective mental state at the time in question.[12] To meet their initial burden, Defendants needed to provide more—for example evidence *tending to support* the assertion that Porter would not have acted maliciously or sadistically, which could have come in the form of, for example, factual assertions concerning Porter's training, personal

---

[12] Defendants cite *Bowles v. Tennessee Dep't of Correction*, 2025 WL 1937091, at *7 (M.D. Tenn. July 15, 2025) (Newbern, J.), *report and recommendation adopted*, No. 3:22-CV-000032, 2025 WL 2556262 (M.D. Tenn. Sept. 5, 2025) (Crenshaw, J.), *reconsideration denied*, No. 3:22-CV-00032, 2026 WL 598398 (M.D. Tenn. Mar. 3, 2026) (Crenshaw, J.) in support of their assertion that they sufficiently satisfied their initial burden on summary judgment. In relying on *Bowles*, Defendants assert that "[t]his Court recently concluded in the context of a failure to protect claim that even where the defendant did not specifically remember the alleged incident at issue, she still satisfied her burden on summary judgment where she submitted evidence of what she would have done had she perceived that the inmate was in danger." (Doc. No. 41 at 15 (citing *Bowles*, 2025 WL 1937091, at *7)).

The Court first notes that the case is not binding on this court, and (learned though the judges involved are) does not have much persuasive weight. Notably, *Bowles* is a report and recommendation, and although it was adopted, that adoption occurred because the Court found the objections to be procedurally improper. *See Bowles*, 2025 WL 2556262, at *2. Moreover, the case is distinguishable from the case at bar. Notably, in *Bowles* the Court was assessing the subjective component of a failure-to-protect claim, but Defendants are citing *Bowles* to support their argument about Plaintiff's Excessive Force Claim. Importantly, these two types of claims are distinguishable, not least with respect to the respective subjective components of the two claims. As noted above, the subjective component of a failure-to-protect claim focuses on whether the defendant was subjectively aware of a *risk* to the plaintiff, whereas the subjective component of an excessive force claim focuses on the *intent* of the defendant at the time he applied the force in question. This difference arguably is material. A defendant's inability to remember the relevant surrounding circumstances arguably tends to suggest somewhat that a defendant did not have the subjective mental state (awareness of risk based on what the defendant knew at the time in question) required for a plaintiff to prevail on a failure-to-protect claim. But a defendant's inability to remember applying force in a particular instance tends not to suggest anything about what the defendant's intent was in applying such force if indeed such force actually was applied.

values, lack of history of improper use of force, lack of other improper professional conduct, etc. Without more, the Court cannot say that Defendants met their initial burden, meaning the burden never shifted to Plaintiff to point to countervailing evidence. So, the absence of evidence from Plaintiff does not warrant granting summary judgment on Plaintiff's Excessive Force Claim.

Therefore, the Court will adopt the portion of the R&R recommending denial of the Motion for Summary Judgment as it relates to the Excessive Force Claim brought against Porter.

CONCLUSION

Accordingly, for the reasons described herein, the Court will **ADOPT IN PART** and **DECLINE TO ADOPT IN PART** the R&R. Specifically, the Court will adopt the recommendation to deny the Motion for Summary Judgment as it relates to the Excessive Force Claim brought against Porter. Accordingly, the Court will **DENY** the Motion for Summary Judgment with respect to the Excessive Force Claim. However, the Court will reject the recommendation to deny the Motion for Summary Judgment as it relates to the Failure-to-Protect Claims. Instead, the Court will **GRANT** the Motion for Summary Judgment with respect to the Failure-to-Protect Claims.

An appropriate corresponding order will be entered.

*Eli Richardson*

ELI RICHARDSON
UNITED STATES DISTRICT JUDGE